LAWRENCE A. JACOBSON SB# 057393
SEAN M. JACOBSON SB# 227241
COHEN AND JACOBSON, LLP
900 Veterans Boulevard, Suite 600
Redwood City, California 94063
Telephone: (650) 261-6280
Facsimile: (650) 368-6221

Attorneys for Debtor
Santa Clara Square, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 09-61196 |
| SANTA CLARA SQUARE, LLC, | Chapter 11 |
| Debtor. | Date: May 6, 2010<br>Time: 2:00 p.m.<br>Place: Hon. Arthur S. Weissbrodt |

**DEBTOR'S STATUS CONFERENCE STATEMENT**

Debtor Santa Clara Square, LLC ("Debtor") submits the following Status Conference Statement:

**I.     INTRODUCTION**

This Chapter 11 bankruptcy case was filed on December 21, 2009. Debtor is procedurally compliant with its filings and payment of fees, with the exception of the Monthly Operating Report for March, 2010, which will be on file by the time of this Status Conference. As is set forth more fully below, Debtor has filed its Chapter 11 Plan of Reorganization and Disclosure Statement, and will be filing an Amended Chapter 11 Plan and related Disclosure Statement concurrently with this Status Conference Statement.

**DEBTOR'S STATUS CONFERENCE STATEMENT**                                                                                      1

## II. STATUS OF CHAPTER 11 CASE

### A. Commencement of the Case

Debtor is the owner of a large piece of commercial real property located in Santa Clara, California. The Property is configured as a shopping center, and consists a total of 138,915 square feet on 12.59 acres of land. The property is valued at a minimum of $19,000,000. The Property is occupied by three commercial tenants, but its maximum potential is likely as a development property.

The secured creditor in this case is East West Bank as the assignee of the FDIC receivership of United Commercial Bank (the "Bank"). The Bank filed a Proof of Claim in the amount of $15,130,422.80, of which $14,494,109.57 represents the principal balance, with the remainder being claimed arrearages and costs.

Prior to the filing of the bankruptcy case Debtor had obtained an offer for purchase, with the purchaser offering the full value of $19,000,000 for the purchase of the Property. Contingencies were scheduled to be removed on December 21, 2009, with escrow to close on December 27, 2009.

However, on November 16, 2009, the Bank caused a Notice of Trustee's sale to be recorded, with the sale set for December 22, 2009. During this period Debtor understands that the note and rights under the Deed of Trust were transferred from the FDIC, as the receiver for United Commercial Bank, to East West Bank. The sale would have resulted in payment of all claims, including that of the Bank, but the Bank refused to continue the foreclosure sale to allow the voluntary sale to consummate. Debtor therefore filed this Chapter 11 case to stay the impending Trustee's sale. The purpose of seeking to stay the foreclosure was to protect the equity in the Property through a plan of reorganization.

### B. Plan for Reorganization

This is a single asset real estate case, and therefore the Plan of Reorganization was due on March 22, 2010. The Plan and Disclosure Statement were timely filed on March 21, 2010. Debtor is filing an Amended Plan and Disclosure Statement to set forth in more detail a loan agreement which

it has negotiated with Essex Property Trust, Inc. ("Essex"). The arrangement with Essex was authorized by the original Plan, but Debtor is amending the Plan to set forth more detail regarding the loan agreement. The loan from Essex will provide funds for the development of the Property, and for payment of claims in this case.

The Amended Plan provides for specific treatment of the secured claim of East West Bank which will (a) cure all arrearages as of the effective from the loan proceeds; (b) establish an interest reserve in the amount of $1,000,000 for adequate protection payments to be made during the term of the Plan; (c) pay monthly interest-only payments on the full amount of the principal balance of the bank's claim (which will be the only remaining portion of the bank's claim after the payment of the arrearages); and (d) pay the principal balance from net profits, the sale and/or rental of developed units, the sale of the entire property, the refinance of the property, or other means provided in the Plan.

The loan from Essex also provides funds for the development of the Property, including a reserve of $1,500,000 to be set aside in order to obtain entitlements. The loan from Essex will be secured by the member interests in Debtor, and upon completion of the development Essex will have the option to convert its loan to a 100% ownership interest in Debtor (subject to a buy-back of a portion of the Property to which member Emily Chen will be entitled in exchange for a $500,000 capital contribution to be made upon confirmation of the Plan).

Other claims, including unsecured claims, will be paid in full from the Essex loan, from net profits, from the sale and rental of developed units, from cash on hand, from the new capital contribution from Emily Chen, and/or from other means set forth in the Plan. In fact, the loan from Essex specifically contemplates payment of administrative claims and property taxes upon the effective date.

In sum, the Plan being proposed by the Debtor is a 100% payment plan, and involves payment of claims through multiple alternative and supplemental methods including (a) proceeds from the loan from Essex; (b) Shareholder Funds; (c) development of the Property, followed by the

sale and/or rental of the commercial and residential units to be developed; (d) continued rental of the Property and collection of rents from tenants; (e) the sale of the Property; and/or (f) funding pursuant to a refinance. This is not meant to be a comprehensive description of the Plan, but rather is a general overview. The Plan and Disclosure Statement contain may other provisions, and further detail regarding the proposed reorganization.

### C. Cash Collateral

In the initial stages of the case the Court granted an emergency *ex parte* request for approval to use cash collateral in order to maintain property insurance. Subsequently, the Bank has appeared through counsel, and the Debtor and the Bank have entered into stipulations for use of cash collateral to pay designated bills on a monthly basis. Debtor and East West Bank have more recently entered into a broader cash collateral stipulation authorizing use of cash collateral in renewable 90 day increments, with a budget of $7,500 per month.

### D. Other

East West Bank has filed a litigation against guarantors which are members of the Debtor, or representative of entity members of the Debtor. That action has been removed to this Court as being related to the Plan, the proof of claim filed by East West Bank (which resulted in a consent to jurisdiction for matters related to the secured claim), the allowance of the claim of East West Bank, and such other reasons as are set forth in the Notice of Removal. The individuals are represented by separate counsel, namely Dek Ketchum. Esq.

By the date of the Status Conference Debtor will have filed its Amended Plan and Disclosure Statement, and is ready to proceed to confirmation. Counsel for Debtor will appear at the Status Conference prepared to discuss the timing of the confirmation proceedings, including the selection of particular dates if appropriate.

Respectfully submitted.

Dated: April 30, 2010         COHEN AND JACOBSON, LLP

                              By:   /s/   Sean M. Jacobson
                                    Sean M. Jacobson, Attorneys for Debtor

**DEBTOR'S STATUS CONFERENCE STATEMENT**        4

Case: 09-61196   Doc# 68   Filed: 04/30/10   Entered: 04/30/10 16:48:04   Page 4 of 4